The first case on today's document is the case of Castellano v. State Farm. We have Mr. Steve Stone for the appellant, and we have Mr. Martin Morrissey for the appellee. You may proceed, Mr. Stone. Thank you, ma'am. Please support Mr. Morrissey. My name is Steve Stone. I represent Judge Castellano. This case comes to you from Williamson County, and it comes to you from a dismissal of the Second Amendment complaint. What happened in this case was that Jeffrey Castellano was injured by an underinsured driver. Jeffrey Castellano was insured by State Farm and had the benefit of underinsured motorist coverage, and he, in all respects, perfected his underinsured motorist claim. State Farm then made an offer of a settlement of $5,000, which was rejected. State Farm then made an offer of $10,000, which was rejected. And State Farm indicated that they would offer no more, and so under the policy, the matter would have to be arbitrary. So Mr. Castellano demanded that since State Farm had indicated that the case was worth at least $10,000, pay the $10,000 and we will arbitrate the difference. State Farm refused and instead tendered $5,000, saying that, well, no, we're going to tender $5,000 despite the fact that we offered you $10,000. The rest of the story is the case was arbitrated. The arbitration amount was greater than both the $5,000 and the $10,000, and then this suit was brought for vexatious and unreasonable delay on the theory that State Farm has an obligation to evaluate the claim and communicate that evaluation, and then if they think Jeffrey Castellano is entitled to $10,000, it ought to pay it and it ought to arbitrate the difference. And State Farm says, no, it has no such duty. And in fact, the circuit court seems to think that State Farm also has no such duty. The issue before you in one case is kind of simple because the issue is did the facts pled in the complaint? Is it sufficient to survive a motion to dismiss? And in that situation, the law says all reasonable inferences of the facts pled have to be in favor of the plaintiff. And so the question for the circuit court was can it be reasonably inferred that State Farm evaluated the claim for more than at all? And in the first-party insurance context, it's different than the third-party insurance context. In a first-party insurance context, imagine if you had a roof damage and State Farm came out to evaluate your roof, and State Farm evaluated the roof damage at $25,000 and says, will you take $15,000? Insurance don't pay for the privilege of negotiating and bartering. In a first-party relationship, the obligation of the insurance company is to, in good faith, try to figure out what is the value of the case. And once State Farm or any insurer determines that the value of the case is X, it has no basis to, one, offer less than that. And two, withhold the money of their evaluation. That's why we pay premiums for insurance. Now, what State Farm argued in the circuit court and what the circuit court embraced was this notion, well, that UIM is just no different than any regular lawsuit in a third-party context. That is to say, Judge Chapman, if you're insured by State Farm and I sue you, State Farm might want to negotiate the best deal it can on behalf of you. That's reasonable in the third-party context because State Farm is trying to protect your assets, protect your interests. But in the context of a first-party claim where you pay premiums to State Farm and you say, I want you to evaluate my claim and pay me what I'm legally entitled to, then when State Farm treats you like this stranger, this third-party claimant, and offers you less money than it claims that you're entitled to, it's being vexatious and it's being unreasonable. And that's the essence of this case. And if Section 155 wasn't intended to address this scenario, then it was hard to square this Court's holding in Jaynes. It's hard to square the appellate court holding in Bouas, which I've cited, and the Miller's Mutual case. In Miller's Mutual and in Jaynes, those cases had to do with coverage. And there was an argument, well, how much coverage does the first-party claimant have? Is it 50 or 100? Is it 40 or 100? And there's a DJ that is brought to court, and they say, well, we don't know how much it is. We know that the case is worth at least what the insurance company said the coverage was, 40 or 50. But because we don't agree on what the amount is, we're going to hold that 40 or $50,000 until the court tells us how much more we owe. And this court in Jaynes says you can't hold back the amount of money that you already admit the person is entitled to. And that's devastatious and unreasonable if you do. Same holding in Miller's Mutual. In Bouas, in the Bouas case, what happened in that case is the insurance company just basically said, well, we have an arbitration clause in our policy. And your case is clearly worth more than our policy limits. But we can just hold it pending the arbitration. We're just going to hold on to the money. And they arbitrated. They did everything according to the book. But the appellate court says the insurance company knew the case was worth more than policy limits, and it just held the money. And that was ‑‑ Mr. Stone, isn't this statute an extra contractual remedy? It is. It's a tort. Isn't it? You know, Judge, I honestly ‑‑ this case has made that muddled in my mind just because the allegation of state farm claims that the Supreme Court says you have to show that there's an actual breach of the letter of the contract. And therefore ‑‑ because there's this phrase in Kramer that says section 155 presupposes a breach of contract. I agree with what the sentiment implicit in your question, which it's kind of like a tort. It's extra ‑‑ it's like a statutory tort. And it's extra contractual in nature. I say so in my brief. Bouaz seems to think it is. Jane seems to think it is. Miller's Mutual seems to think it is. And yet what state farm says is, no, section 155 really doesn't mean that at all. It's just simply you prove that there's a breach of the actual letter of the policy, and only then can you get an extra contractual remedy. Well, but Kramer does call this an extra contractual remedy. It does. Simultaneously with what they ‑‑ what state farm focuses on, it says ‑‑ Kramer says it's an extra contractual remedy. All the cases say that. Now, the question is, what does that mean? I think it means that it's like a statutory tort. In other words, if you can show that the manner in which the claim was handled, if they were vexatious, if they were unreasonable, and the way they handled it, even if they complied in the end, the question is, did they comply in a way that was reasonable? Well, what was their defense to the contractual claim? Did they have one? Well, what state farm says in this is that if you read the letter of the law, or letter of the contract, rather, it says there's two ways to settle a UIN claim, by agreement or by arbitration. State farm says, we didn't agree. Therefore, we have to arbitrate. So there was never a defense as far as coverage. No, no, no. So coverage was not an issue. We know they evaluated it for more than the 5,000 because they offered 10, right? And yet at arbitration, pre-arbitration or at arbitration? No, no. Before arbitration, they offered 5. It was rejected. And then they offered 10. Before arbitration? Before arbitration. That was rejected. Then we arbitrated. And at arbitration? At arbitration, they argued that it was worth 5. And now that's not a record, and I don't think – I mean, I can tell you that, but to be fair, I didn't plead that. I know that because I guess I'm a witness to it. But that's what happened. And so what you have – you know, my position is this. The position of Mr. Castellano is this. He pays premiums to State Farm for the privilege of these policy benefits. It's a first-party relationship. It's really not adversarial. You're supposed to work together to get to a result. Now, it can become adversarial. In other words, if State Farm and its insurer never agree, well, then you arbitrate the disagreement. Here, State Farm implicitly agrees that it has some obligation to pay what it thinks it owes because it paid 5,000. Why would it do it if it didn't believe that? And indeed, in my practice, the reason I think – even though this is a small case and the dollar amount is small, the reason it's significant is because not all insurers do this. Some do. Some tender the amount, arbitrate the difference. Some don't. In fact, in my experience, sometimes State Farm does it and sometimes State Farm doesn't. And I think it's important that we have a uniform system. But the notion – what State Farm says in this case is a first-party claimant can be treated like a third-party claimant. And that just isn't the way the insurance system is supposed to work in a first-party system. I mean, if you have a fire loss, if you have a roof claim, if your fender is damaged and this is a first-party, just tell me what my fender is worth. Can you imagine if your insurance company becomes your adversary? That's what everyone – that's why we have 155 is to stop them from being your adversary in these first-party relationships. So clearly, even though the damages are modest, Jeffrey Castellano was without $5,000 that State Farm believes he was entitled to. That's what's pledged. And he was without that money for the entire period of his arbitration. Why is that important for someone like Jeffrey Castellano? Because when you're injured, you get behind on bills. You might have lost some work. You're in a vulnerable situation. And if State Farm can withhold money that State Farm believes you're entitled to, well, then they have an advantage in ultimate negotiations. Jeffrey Castellano might have been in a position where he said, my gosh, they think my case is worth $10,000. They'll only give me $5,000. Arbitration is going to take me another nine months. I can't – I got bills I have to pay. And so he says, I'm just going to have to take $5,000, Steve. What if that happened? And the reason we go – the reason we advocate in this first-party relationship if State Farm thinks it's worth $10,000, pay $10,000. Because at least he gets the full benefit of his insurance bargain, and then he can arbitrate the deal. So to come full circle, if you read the complaint, I think there are reasonable inferences that can be drawn that prove there's vexatious and unreasonable conduct here. And to be thrown out of court before we even get to the discovery stage to find out why did State Farm offer $5,000 and then $10,000? Why did State Farm tender $5,000 when it thought it was worth $10,000? Why didn't it tender the $10,000? We don't have any of those answers until we get in discovery. And so I would ask that the Court reverse and allow the case to proceed. Thank you. Thank you, Mr. Stone. You'll have the opportunity for rebuttal. Mr. Morrison. Okay, please support. I'm Mark Morrison. The question before this Court is whether the Second Amendment complaint, which was actually the Court's attempt at pleading, stated a cause of action. That's the issue before this Court. It was the issue that was presented to the trial court, to Judge Beyer. And he answered no. Why? Because the contract does not require the insurer to pay a non-owed pre-arbitration offer. There is absolutely nothing in the contract that requires State Farm to do that. Mr. Morrissey, you said not owed? Yes, Your Honor. So was there a contractual defense that you were raising that somehow you were not going to give coverage to your insurer? No. There was UIN coverage. But there was not an amount relative. Well, State Farm offered $5,000, and I don't think they would do that unless they thought an amount was owed. Well, a plaintiff's attorney might make a demand which is an offer to settle for reasons that have nothing to do with the actual value of the case. And likewise, that is an offer to settle within a certain parameter. But an attorney for an insured plaintiff is not bound to say that's a maximum. No, when State Farm- And nor is one side bound to say that's a minimum. It's actually not an agreement at all that the value of the case is that. Secondly, the contract term that has to be decided for payment to occur for an owed amount to exist happens one of two ways. Agreement as to that contract term, Your Honor, within the contract term is the amount that would be owed by the underinsured motives. Not a part amount, not a partial amount, but the amount. And if no agreement, then it's arbitrary. So nothing is owed until we don't know what it is. It's an unknown. The case law seems to reflect that this statute has a defense if the insurance company has a bona fide contractual defense. Did you raise one? Your Honor, let me unwrap the question because what the arbitration is, is a contractually agreed to method to determine an unknown value. We have to consider the coverage. It's underinsured motives coverage, uninsured motives coverage. The legislature has required an arbitration process with adversarial process set forth in Section 143A to determine the value of an uninsured motive statement. We're talking about an unknown. It is the insuring of an unknown, an anticipated unknown. So what this contract is, it reflects what the legislature has approved in the context of UM, an unknown, a way to figure it out. So what I'm saying is the arbitration is an agreed to method to determine value. The contract, it is not the contract. It is a method to determine value. And if it's complied with, the terms of the contract are complied with, which they are in this case, then there is no action on the contract. 155 is not a charge. If there is an action on the contract, a violation on the contract, a breach of the contract, just as 155 says, an action on the contract. How do you explain the cases that all call it extra-contractual? Every case that's been cited calls it extra-contractual. Well, I think that the words used are important because it assumes the contract. It's contract plus. That's why I asked you if there was a defense to the contract. He didn't make a premium payment. You know, it lapsed. There was an equal set-off, for example. Those would be contractual defenses that State Farm would not legally be entitled to owe any money, right? Yes. What I hear you saying is there were no legally contractual defenses. The issue was how much do we owe? Not do we owe, but how much? Am I right when you unraveled the question? Yes, and the contract permits it to be determined in one of two ways. So the contract was complied with, and if Your Honor wants me to say was there a contract defense, absolutely. The contract was complied with by its very terms. The contract is the standard by which we determine 155 is to be awarded. So there is, in that sense, a contract defense. The contract was complied with. What happened here was what was exactly contemplated by the contract, nonagreement and therefore arbitration. So what occurs here is a pleading, which in the pleading, the insured stated, enlisted things, and said that in consequence of these, breach of contractual duties. I mean, that was what was pleaded. The Second Amendment complaint attempted to plead a breach of contractual duties. The State Farm's position is that there were no breach of contractual duties. We have to keep in mind the policy that's attached to this, the exhibit, is the plea. And where there's conflict between the contract that contains and sets corporate duties, those control over the allegations. Conclusions and assertions are not to be accepted by the trial court in determining whether cause of action is stated or not. They're supposed to be disregarded. And this complaint is invention because based on the complaint attachment, the contract, the actual insurance contract, there was a total compliance. There's three important rules of construction, I think, that apply here. One is to evaluate the words with a view to give effect to the intentional parties. Second is to give the terms their common and ordinary meaning. And thirdly, read the contract as a whole in light of the coverage that's involved. And this is UIM coverage, the attempt to insure, provide coverage for an unknown injury amount. This contract is not briefed because offers are not agreed. Thoughts are not agreements. An offer is a proposal. An agreement is a meeting of minds on a particular concept. The concept that's in this contract is the amount that is due. We don't know what that is. He doesn't know what that is. And he's saying he knows what it is. We don't know. There is a fortuitous aspect to this insurance. What are the arbitrators going to do? In fact, under UIM, there's no requirement to arbitrate the amount. Under UIM, it has to be offered. But you can have a jury trial on what that amount is owed. The Phoenix v. Rosen case is a good example. Two years ago, the Supreme Court, they arbitrated a case, $345,000 awarded arbitration. There was a declination provision in the policy. They went to jury trial. They went through the entire arbitration process and then went to jury trial afterwards. The Supreme Court says that's permitted because that's the contract. Well, why is it that State Farm would offer $10,000 in good faith, I assume, and then when the client decides or the insured goes to arbitration, they only offer $5,000? Why is that? There's no obligation to offer anything. Well, you have a good faith obligation to your insured, don't you, who pays you premiums? Isn't that what the statute's all about? No, the good faith obligation. There's two things in your question. One is the good faith and fair dealing obligation that is in every contract which was misused for years until rectified by the Supreme Court in 1997 in the Kramer v. Insurance Exchange case. The good faith and fair dealing concept was tried to turn it into a court, but it's not a source of independent duties. It has a specific, well-established, restricted meaning in the context of contract law. It's used when there's a particularly discretionary, one-sided provision, like a franchisee-franchisor relationship, and the court then uses that principle to say that we're not going to permit the contract to be used in a way to deprive somebody from the benefit of the bargain. That's good faith and fair dealing. It is not a tort. Bad faith and fair dealing was rejected by the Supreme Court in Kramer. It is not the basis, cannot be the basis or source of independent duties. Otherwise, it's anything that I say it is, and the court said it's not. What did you say the court said about Kramer? The court said that the good faith and fair dealing concept is not a source of independent duties. It has a restricted meaning. That's the first part of your question. Under the contract, and that was my question to you, do you agree that State Farm had a duty to its insured under the contract to act in good faith? Isn't that what Kramer says? Every contract has a duty of good faith. So you would agree that if State Farm makes an offer of $10,000, one could suppose that that was being made in good faith under the contract. I don't agree that there's a duty to make an offer of good faith. I didn't say that. Okay. I said if it's offered, can we assume that State Farm made the offer under the contract in good faith to its insured? Can you make that inference? It was a made offer. I don't think the good faith analysis has anything to do with it. So State Farm could just throw money at someone and it may have no basis in fact. I've never seen State Farm do that. Let me say one thing. If good faith somehow has any bearing on this issue, then it goes both ways. And was he in good faith when he demanded twice what the arbitrators gave him? These are negotiations. These are offers. If a plaintiff's attorney makes an offer to settle the case for $10,000. No, the insurance company. I'm looking at the insurance company, what they offer. But any duty of good faith in fair dealing in the contract is reciprocal. Okay, but we're focusing right now on the conduct of State Farm and whether or not under his theory he can state a claim. No, not for good faith in fair dealing. He's trying to use this authority. He wants to enter into a time machine and go back to pre-1997 and say, look, we've got a good faith in fair dealing authority. He wants to go back. Well, his complaint doesn't say that. His complaint says this is a breach of contract. I thought he just got up and said I have authority. No, I asked him about that. But you would agree, and I think you started out your argument saying that. Absolutely. This is all breach of contract. And I've got things to say why it's not a breach of contract. Okay, stop asking. How we know that an offer is not a meeting of the minds. It's an offer. If you take the term agreement and say that it means an offer, then we get all kinds of crazy results. He rejected all the offers, and he went to arbitration. What was arbitrated? That's the question. What was arbitrated was the thing in the contract, which was the amount that was owed. Inventing new terms. There's an inventing of new terms in this case. An offer simply is not an agreement. For example, if an offer to settle of $10,000 is made by the plaintiff and an offer in response of $5,000 to settle is made by the carrier, and the arbitrators come back with $20,000, under his theory, the carrier only has to write a check for 10 because there was an agreement. Well, he agreed that it had a maximum value of 10. Think about it. Offers are not agreements. When we interpret offers to be agreements, all kinds of crazy results happen. Now, we know that's what he means. We know that's what he means. Because on page 20, in regard to the trial judge, he says, You think it has to be advanced, but you don't have to give it back. What he's saying on page 22 is that you not only have to, you have to pay an amount that's your highest offer, advance it, and you do not get it back. Page 22 of the argument and page 20 of the argument. How would anything say that? Moreover, that would mean that the arbitration is irrelevant. Now, uninsured mortgage has a purpose. The purpose was set out again in the Phoenix versus Wilson case. It's the place he insured in the same position he would have occupied if the tortfeasor and the carrier had a quick new shipment. That's not putting you in the same position. That's a windfall. If the arbitrators come back with a less than offered, already advanced amount, be a stupid. And what are we going to argue if they come back with more? Will we have an agreement that it wasn't worth that much because you made a demand and you offered to settle for less than that? We're standing the contract on its head. He's inventing terms that find no basis in this policy. This policy is quite straightforward. If we do not agree on that value, then that value needs to be arbitrated. Taken to its logical conclusion, there would be all kinds of strange reasons. If you keep in mind, this is a process that is approved by four U.M. governments. The legislature wrote this, and it's borrowed from the U.I.M. here. It's expeditious. It's much quicker than a trial. The process is similar to what's in the U.M. The U.M. provisions that are written by the legislature do not have any statements saying that you have to advance. House doesn't stand for this problem. House involved a situation where there was a liquidated sum that was due. It was either $40,000 or $100,000. So there was no dispute about the $40,000 that was owed. Here, the whole contract sets up a process to try to deal with an unknown. It's very different than House, and House has no application because of that. Nothing is being withheld here. Again, we go to the pleading. Conclusions. Something was withheld. We look at the contract. What was withheld? How can anything be withheld if it's not owed? Under the contract, it's not owed. It was withheld. You had an offer. We had an agreement. It's worth that much. So if you demand less, or if you demand this and it goes above it, we have an agreement that it's not worth that much? It really makes no sense. It turns language and ordinary meanings on its head. So we have this invented concept of withheld in the policy. We have a duty to share evaluations in an admittedly adversarial, it is adversarial. I mean, the legislature sets up a process whereby we're going to have arbitrations, we're going to have subpoenas, we're going to have witnesses, we're going to have attorneys. I mean, that's all anticipated. And he says, well, you have to share your evaluation. If the EYIM contract does not even have an arbitration clause, which it doesn't have to, you can go to a jury trial. I guess under his theory, you have to share your attorney and client evaluation about it with the insurer. Is it customary in the State Farm arbitrations for the arbitrators to ask? I'm sorry, I didn't hear the first part. Is it customary in the State Farm arbitrations for the three arbitrators to ask what the offer and demand was? Not where I practice. The arbitrators are gathered, chosen and gathered to determine the amount that would be due by virtue of the uninsured notary's contract. These are usually lawyers that are picked from the community, right? Lawyers. And as I read your arbitration provision, each party pays their own arbitrator, and then you split the third. I believe that's accurate. Well, if I'm reading it right. And then all the costs. Do you think that offering $5,000, as Mr. Stone argued, is a means of trying to get the insured to settle because of the cost of arbitration? I mean, if you've got to pay a lawyer and you've got to pay your own attorney fees. And the arbitration cases, in this district anyway, seem to look at that, whether it's procedurally or substantively unconscionable. Do you think that by offering $5,000 when you've previously offered $10,000 is a wedge, an adversarial wedge, as Mr. Stone argued? No, I think it's a contract. I think this is allowed by the contract. It's anticipated by the contract. If he demands $50,000 to settle, he has every right to do so. We're talking about an unknown. We're talking about a personal injury value. To say that this is something that everybody ought to be insurers about or change the whole character of it because, you know, this is an insurer, this is an insurer, denies what kind of coverage we're talking about. I think it's fully anticipated and appropriate, and negotiations are a good thing. They bring about resolution of cases. Arbitrations are expedited and are generally considered good things. I mean, we want to have a concept that creates lawsuit upon lawsuit upon lawsuit because now we're going to invent a term. We're going to say offers are agreements, and agreements are offers. You said something to me. I can pick your brain now. I can pick your brain after the decision of the arbitrators because you said that you offered to settle for less than what they gave, and we agreed that it was worth less. Does that make sense? That is your time, Mr. Morrison. Thank you for your argument. Mr. Stoner, you have rebuttal time. I'm going to follow up on a couple of things Mr. Morrissey said in a justice case you hit on. There is always an obligation of good faith, and in a first-party UIN context where he says it's adversarial, it's not supposed to be adversarial. Arbitration is not the same thing as adversarial. The negotiation process does not have to be adversarial. If State Farm, who has $40 billion worth of assets and evaluates injury claims all over the country, says Jeffrey Castellanos should get $10,000 because they've evaluated hundreds if not thousands of cases just like him, then they ought to give him the $10,000. That's what he paid the premium for. He didn't pay State Farm for a fight. It's like the Monty Python argument clinic. It's one of my favorite skits where the guy goes in and he pays money to have an argument. Go ahead. What if the arbitrators had come out with less, though? Well, it's interesting, and I feel a little bit hoodwinked, because first of all, the transcript of the argument, of course, is not at issue. The only thing is the complaint. But the arguments at circuit court happened after a series of pleadings. And what happened in this case was there was some discovery produced. And in the discovery produced by State Farm, it indicates it won't take the money back if somehow arbitration was more than their tender. So it's in that context that I make that offer. But if State Farm says the case is worth $10,000 and their lawyer advocates it's worth $2,000 at arbitration, that's not good faith. That is not good faith. That's vexatious and unreasonable conduct. If State Farm says it's worth $10,000 and their lawyer says it's worth $2,000 as part of an adversary process, they are ripping off that insurer. That's what this case is about. He says these things are reciprocal. They're not reciprocal. There's no Section 155 for insurers. There's Section 155 for insurance companies, because good faith is what is required in every contract. That's what I fled, a breach of the contract. What's the breach? State Farm, you said it was worth $10,000, and you kept $10,000 from me. And you made me take it from you when you already said it was mine. That's vexatious and unreasonable. What if this were a fire laws case and State Farm said it's worth $150,000? Your house is worth $150,000. And my wife says, Steve, don't take that, because our house is worth $175,000. And I say, well, State Farm is worth $175,000. What if they said, well, we're not going to give you the $150,000? Be homeless. Live in a hotel. We won't even give you the $150,000. We're going to hold it and make you take it from us, even though we think you should get it. That is not what the first-party relationship in the insurance context is about. That's what third-party relationships are about. If I hurt someone and I'm State Farm insured, I want State Farm to fight like dogs to keep my assets safe and to pay as little as possible, potentially, because that keeps my premiums down. But when I'm the premium giver, when I'm the premium payer, and I am paying for the privilege of a benefit like a first-party relationship, they can't play this cat-and-mouse game. It doesn't satisfy what this contract is all about. And so that's what makes this very small case important. It is a small case in terms of dollars, but it's just not right. It's just not right for State Farm to treat their insurers like adversaries. All they have to do is say, hey, Mr. Costolano, we're a big company. We evaluate this stuff all the time. We think your case is worth $10. Here's $10. You think it's worth more than that? Let's go arbitrate. But the arbitration is going to be the actual dispute. How much more than $10 is it really worth? That's what this whole system should be done. This is how the system should work, and it should be consistent throughout the state. And I think your decision will help make that so. Thank you. Thank you. Thank you both for your briefs and your arguments. We'll take the matter under advisement.